## Chidester *v.* Yard, Exr., Appellant.

*Beneficial associations—Payment of premiums—Wagering policy—Evidence.*

In an action to determine the ownership of the proceeds of a benefit certificate between the executor of the assured and the beneficiary, where there is uncontradicted evidence that the money with which the assured paid premiums to the beneficial association was furnished by the beneficiary who had no insurable interest in the life of the assured, but the evidence is conflicting as to whether the money was furnished for the express purpose of paying the premiums, or as a mere general loan or gift, the case is for the jury.

Argued April 25, 1893. Appeal, No. 92, Jan. T., 1893, by defendant, H. C. Yard, executor of Fannie Vance, deceased, from judgment of C. P. Erie Co., Nov. T., 1891, No. 12, on verdict for plaintiff, Ella J. Chidester, formerly Durban. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Issue to determine ownership of proceeds of benefit certificate issued on life of Fannie Vance by the Equitable Aid Union, a beneficial association organized under the laws of Pennsylvania.

At the trial, before GUNNISON, P. J., it appeared that plaintiff was a step-daughter of Fannie Vance, but not a member of her family. Fannie Vance became a member of the Equitable Aid Union in 1880, the beneficiary named in her certificate being her son. On the death of her son in January, 1885, a new benefit certificate was issued in which plaintiff was named as beneficiary. During the lifetime of Mrs. Vance, plaintiff paid to her various sums of money out of which the premiums were paid to the beneficial association. The evidence was conflicting as to whether the money was furnished for the express purpose of paying the premiums, or as a mere general loan or gift.

The court charged in part as follows:

" The only question then is, what was the nature of this transaction by which this certificate was issued in which Mrs. Chidester or Mrs. Durban was named as beneficiary? The testimony is clear and uncontradicted that Mrs. Durban did furnish the money which paid the assessments upon the benefit certificate ; that she furnished that money for a long period before the death of Mr. Vance, and after his death until the death of Mrs. Vance. The question for you to determine then is whether she paid these assessments or whether Mrs. Vance paid them. If this money was merely given to Mrs. Vance in order that Mrs. Vance might be able to pay them, and not for the purpose of paying them herself (Mrs. Durban), but merely for the purpose of assisting Mrs. Vance, with no promise to repay the money to Mrs. Durban, and no promise that she might derive benefit from this insurance that was payable in case of Mrs. Vance's death—in other words, if this money which Mrs. Durban furnished to pay the assessments was a gift to Mrs. Vance, for Mrs. Vance's benefit and not for Mrs. Chidester's benefit, then you might be justified in finding that Mrs. Vance

paid the assessment and not Mrs. Chidester. If, however, this money was paid by Mrs. Chidester, if she gave the money to Mrs. Vance for the purpose of evading the provision of the law, that would make this a wagering policy, and if she advanced the money to Mrs. Vance for the purpose of deriving benefit herself from this policy, then the fact that it passed through Mrs. Vance's hands and was paid by Mrs. Waidler to the society would not change the nature of the case at all; it would still be a payment by Mrs. Durban. [That is really the only question for you to determine; whether this money was paid by Mrs. Vance or by Mrs. Durban. Not the money that was paid before January, 1885, when the policy was changed and Mrs. Durban named as the beneficiary, but immediately after that. The assessments following that change in the certificate, were they paid by Mrs. Durban or by Mrs. Vance? The payments that were made before are only evidence for you to consider in determining who made the assessments afterwards. The evidence of Mrs. Fargo I think is, that there was no change in the manner in which the assessments were paid until the delivery of the certificate to Mrs. Durban, which she testifies was in May of 1885. The secretary of the subordinate union, Mr. Wright, has told you that there were assessments made every month, so that there must have been assessments made in February and March and April following the issuing of the certificate in which Mrs. Durban was named as beneficiary, and there was no change made in the manner of paying the assessments. The money was taken to Mrs. Vance's house and paid to her or Mrs. Waidler, and Mrs. Waidler then took the money to the accountant of the union and paid it, and that was the way it was done until May, 1885, so that, if that evidence is true, that is the way it was done through February and March and April. Mrs. Fargo and her daughter, one or both of them, tell you that this money was given to Mrs. Vance to do what she liked with; to pay these assessments if she desired to, or to do whatever else she pleased with it; that there was sometimes more given than what was necessary to pay the assessments. Mrs. Waidler tells you that this money with which she paid these assessments was the money of Mrs. Durban, and that she paid them for Mrs. Durban; so that there is a conflict in the testimony, one testifying that the money was

given to Mrs. Vance and became her money, from which you might conclude that Mrs. Vance paid these assessments, and the other testifying that the money went through that channel merely, but was still Mrs. Chidester's money, and that Mrs. Chidester paid the assessments.   That Mrs. Waidler paid them for her, and not for Mrs. Vance.] [12]   It is not for the court to determine a question of fact of that kind; it is the peculiar province of the jury, and I only call your attention to the testimony of the witnesses which it is important for you to consider in coming to a conclusion upon that point.   And if you find that this money, these assessments and dues that were paid after the designation of Mrs. Durban as the beneficiary up to the time when the certificate was delivered to her and came into her possession, that these payments were made by Mrs. Vance, then your verdict should be for the plaintiff.   If these payments were made by Mrs. Chidester, your verdict should be for the plaintiff for the amount of those payments and the interest upon them down to date, and for the defendant Mr. Yard, who is the executor of Mrs. Vance, for the balance of the money which is in court."

Plaintiff's point was among others as follows:

" 3. If the jury believe from the evidence that Mrs. Chidester aided and assisted Mrs. Vance and her husband by furnishing money from time to time to Mrs. Vance for their living expenses and also to keep up this policy while the son of Mrs. Fannie Vance was the beneficiary, and the policy of her husband in which Mrs. Vance was the beneficiary, and that Mrs. Vance had thereafter Mrs. Chidester named as beneficiary in her policy, because she was under obligations to her for assistance, moneys advanced, etc., that the naming of Mrs. Chidester as beneficiary did not make the policy a wagering policy, and that their verdict must be for the plaintiff.   *Answer:* This point is affirmed, provided the jury find that the assessments for a time after the naming of Mrs. Durban as beneficiary were paid by Mrs. Vance, and that when Mrs. Durban began to pay them it was not in pursuance of an arrangement made at or before the naming of Mrs. Durban as beneficiary." [5]

Defendant's points were among others as follows:

" 3. That there is no evidence in this case from which the jury could find that Mrs. Vance retained possession of the ben-

eficial certificate in question, and paid the assessments thereon after the time Mrs. Ella Durban (now Mrs. Chidester) was named as beneficiary therein." Refused. [6]

" 4. That the undisputed evidence showing that Mrs. Durban paid all the assessments on said beneficial certificate from the time she was named as beneficiary therein in 1885, down to Mrs. Vance's death in 1891, this fact renders the transaction a wagering one in contemplation of law, irrespective of the question of the good faith of the parties, and the plaintiff is entitled to a verdict in this case for only such an amount as is equal to the assessments, etc., so paid by plaintiff on the certificate in question, and interest thereon, and for the balance of said fund the verdict should be for the defendant. *Answer :* The evidence on this question is contradictory and the point is refused." [7]

" 5. The evidence clearly showing that Mrs. Durban (now Chidester) furnished all the money to pay the assessments and dues on said beneficial certificate from the time she was named as beneficiary therein, the fact that a portion of said money passed through the hands of Mrs. Vance in no manner changes the character of the transaction, and the legal effect is the same as if all the payments had been made directly by Mrs. Durban. *Answer :* The evidence upon this question being contradictory the point is refused." [8]

" 6. There is no evidence that Mrs. Vance paid any of the assessments or dues on said beneficial certificate after Mrs. Durban was made beneficiary therein. *Answer :* There is no evidence of any change in the manner of paying the assessments until May, 1885. Whether or not they were paid before that date by Mrs. Vance or by Mrs. Durban is a question for the jury." [9]

" 7. That under all the evidence in the case the verdict should be in favor of the plaintiff for the amounts actually paid by her for assessments, etc., on said beneficial certificate from the time she was named as beneficiary therein, with interest from the times of the respective payments, and should be for the defend- ant for the balance of said fund." Refused. [10]

" 8. When a beneficial certificate or policy of insurance is made payable to a party having no insurable interest in the life of the assured, and the beneficiary pays the accruing assess-

ments or premiums thereon, the presumption of law is that the transaction is a wagering contract, and there being no evidence in this case to rebut that presumption, the verdict should be for the defendant, except as to amount of assessments, etc., paid thereon. *Answer :* When a beneficial certificate or policy of insurance is made payable to a party having no insurable interest in the life of the assured, and the beneficiary pays the accruing assessments or premiums thereon, the presumption of law is that the transaction is a wagering contract. Whether or not that presumption is overcome, and the plaintiff can recover more than the amount she paid in assessments and dues with interest, depends upon the conclusion the jury arrives at as to the nature of the transaction at the time of the change in the certificate, and as to who paid the assessments thereafter, upon which question the evidence is conflicting." [11]

Verdict and judgment for plaintiff for full amount of claim. Defendant appealed.

*Errors assigned* were (5–12) instructions, quoting them.

*Joseph M. Force, E. A. Walling* with him, for appellant, cited: U. B. Mutual Aid Soc. v. McDonald, 122 Pa. 324; Gilbert v. Moose, 104 Pa. 74; Siegrist, Admr., v. Schmoltz, 113 Pa. 326; Appeal of Corson, Exr., 113 Pa. 438; Scott v. Dickson, 108 Pa. 6.

*C. A. Allen, L. Rosenzweig* with him, for appellee, cited: Scott v. Dickson, 108 Pa. 6; Corson's Ap., 113 Pa. 438: Folmer's Ap., 87 Pa. 133; Bacon, Benefit Societies, § 246; Bomberger, Exrx., etc. v. U. B. Mutual Aid Society, 18 W. N. 459; Worley, Adm'r, v. Aid Society, 10 Fed. R. 227.

PER CURIAM, May 22, 1893:

This issue was framed to determine the ownership of a fund raised by the payment into court by the Equitable Aid Union of the amount of a certificate or policy issued by it on the life of Francis Vance.

The certificate was taken out by Mrs. Vance. At the time of her death it was held by the plaintiff, and she was the beneficiary named therein. The executor of Mrs. Vance claims the

money on the ground that the certificate in the hands of the plaintiff was a mere wager on the life of Mrs. Vance. Whether this was so or not depended on the conclusions to be drawn from the testimony, some of which was conflicting. Under the evidence therefore the character of the plaintiff's holding was a question of fact for the jury. It was properly submitted and has been settled by the verdict.

The judgment is affirmed.